UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SURYA H.,[1]

                      Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

DECISION & ORDER

20-CV-1862MWP

## PRELIMINARY STATEMENT

Plaintiff Surya H. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 11). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.      Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

  (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his] past work; and

  (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II. Procedural History

  Plaintiff filed applications for SSI and DIB benefits alleging a disability onset date of December 26, 2013. (Tr. 362, 377, 419).[2] Those applications were denied by ALJ Roxanne Fuller on August 30, 2017 (the "2017 Decision"). (Tr. 127-38). On June 19, 2018, the Appeals Council entered an order remanding the case to the ALJ and directing the ALJ to address plaintiff's application for SSI, as well as DIB. (Tr. 145-46). On February 24, 2020, ALJ Timothy M. McGuan concluded that plaintiff was not disabled (the "2020 Decision"). (Tr. 15-31). Plaintiff commenced this lawsuit on December 17, 2020. (Docket # 1).

---

[2] The administrative transcript (Docket ## 6-8) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

**III.    The 2020 Decision**

In the 2020 decision, ALJ McGuan followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of December 26, 2013 through her date last insured of March 31, 2015. (Tr. 18). At step two, the ALJ concluded that plaintiff had the severe impairments of asthma, irritable bowel syndrome ("IBS"), migraines, anxiety, depression, and panic attacks "[t]hrough the date last insured." (*Id.*). The ALJ also found that plaintiff had other impairments that were nonsevere and several conditions that were not medically determinable. (Tr. 18-19). At step three, the ALJ determined that, through the date last insured, plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 19-22). The ALJ concluded that, through the date last insured, plaintiff retained the RFC to perform light work involving frequent handling and fingering with both hands, and occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 22-29). The ALJ also found that plaintiff was limited to simple, unskilled work of a routine and repetitive nature requiring only frequent interactions with coworkers and supervisors and occasional interactions with the public and exposure to respiratory irritants or environmental extremes. (*Id.*). At steps four and five, the ALJ found that plaintiff had no past relevant work but concluded, based on plaintiff's age, education, work experience, and RFC, that other jobs existed in significant numbers in the national economy that plaintiff could perform, such as parts routing clerk, photocopy machine operator, and housekeeping cleaner. (Tr. 29-31). Accordingly, the ALJ found that plaintiff was not disabled "from December 26, 2013, through the date of th[e] decision." (*Id.*).

IV.     **Plaintiff's Contentions**

Plaintiff contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 12). First, plaintiff maintains that the ALJ failed to comply with the remand order of the Appeals Council dated June 19, 2018, which directed the ALJ to consider both plaintiff's SSI and DIB applications for benefits. (Docket ## 9-1 at 18-21; 12 at 1-4). According to plaintiff, the ALJ's decision demonstrates that several of his findings were limited solely to plaintiff's DIB claim. (*Id.*). Next, plaintiff challenges the ALJ's RFC determination on the grounds that he relied upon stale opinions issued by state consulting physicians Samuel Balderman, MD, and Susan Santarpia, PhD, and otherwise formulated an RFC based upon his own lay opinion of plaintiff's functional capacity. (Docket ## 9-1 at 21-27; 12 at 4-6).

V.      **Analysis**

A.      **The ALJ's Compliance with the Appeals Council's Remand Order**

I turn first to plaintiff's contention that the ALJ failed to comply with the Appeals Council's remand order. (Docket ## 9-1 at 18-21; 12 at 1-4). Relevant regulations provide that on remand "[t]he administrative law judge *shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b) (emphasis supplied). "The ALJ's failure to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand." *Parks v. Colvin*, 2017 WL 279558, *3 (W.D.N.Y. 2017); *see also Daumen v. Berryhill*, 2018 WL 6380385, *5 (W.D.N.Y. 2018) ("[i]f an ALJ fails to comply with an Appeals Council remand order, [his or her] decision is subject to judicial review and can form the basis for a remand to the

6

Commissioner"); *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) ("[t]he ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand").

Plaintiff maintains that the ALJ failed to consider her Title XVI SSI claim because several of his findings are limited to her date last insured. (Docket ## 9-1 at 18-21; 12 at 1-4). "The relevant period for [a] Title II claim spans between the . . . alleged onset date to the date last insured . . . , while the relevant period of consideration for [a] Title XVI application . . . extend[s] . . . to the date of the ALJ's decision." *Jaquish v. Comm'r of Soc. Sec.*, 2017 WL 3917019, *6 (N.D.N.Y. 2017). According to plaintiff, the ALJ failed to consider her SSI (Title XVI) claim because he temporally limited his findings at steps one, two, and three, as well as his RFC finding, to plaintiff's date last insured – consistent with findings relating solely to a DIB (Title II) claim. (Tr. 18-19, 22). The Commissioner disagrees, maintaining that the temporal limitations in these findings are merely non-substantive drafting errors and that review of the decision as a whole demonstrates that the ALJ considered the entire period of alleged disability through the date of the decision. (Docket # 11-1 at 15-17). "[C]ourts in this Circuit have found that where an ALJ's decision contains typographical mistakes, the error can be harmless if it is obvious from the decision as a whole that the error is ministerial and not substantive." *Will v. Comm'r of Soc. Sec.*, 2018 WL 1026229, *2 (W.D.N.Y. 2018). I agree with the Commissioner that the ALJ's errors were in the nature of scrivener's errors, which were harmless considering that the decision as a whole demonstrates that the ALJ fully considered both the DIB and SSI claims.

As an initial matter, the ALJ explicitly acknowledged in his decision that he had been directed by the Appeals Council to "[i]ssue a decision for both the Title II disability and

7

SSI benefits." (Tr. 15). Unlike the 2017 Decision, ALJ McGuan properly cited to regulations applicable to both the Title II and Title XVI claims. (*Compare* Tr. 127-38 (citing regulations applicable only to Title II claims) *with* Tr. 15-31 (citing regulations applicable to both claims)). Moreover, the ALJ's conclusion finding plaintiff not disabled was not limited to her date last insured; rather, it expressly included the entire period through the date of the ALJ's decision. (Tr. 16 ("I conclude the claimant has not been under a disability within the meaning of the Social Security Act from December 26, 2013, through the date of this decision), 31 ("[t]he claimant was not under a disability, as defined in the Social Security Act, from December 26, 2013, through the date of this decision")). Indeed, the ALJ articulated separate conclusions for the DIB and SSI claims:

> Based on the application for a period of disability and disability insurance benefits filed on November 7, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on November 7, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 31). Consistent with the ALJ's conclusions, he considered record evidence spanning the entire period, including evidence after March 31, 2015 – plaintiff's date last insured. (Tr. 17-31). For example, the ALJ discussed at length the treatment notes and medical source statement authored by plaintiff's mental health counselor, with whom she did not start treating until September 2019. (Tr. 27-29). Similarly, the ALJ discussed the treatment notes authored by plaintiff's rheumatologist when she returned to him for an evaluation in 2016. (Tr. 25).

      The ALJ's determination makes clear that he considered both the DIB and SSI claims, and I conclude that the temporal limitations to plaintiff's date last insured contained in some of his findings are nothing more than careless scrivener's errors that do not warrant

8

remand. *See Arnold v. Berryhill*, 2018 WL 4362067, *5 (S.D. Fla. 2018) ("[t]he ALJ's statements acknowledging the SSI claim and the ALJ's analysis of the evidence after [p]laintiff's date last insured make clear that the ALJ's statements that this is a 'Title II case only' was simply a typographical error[;] [a]ccordingly, the undersigned finds that the ALJ properly considered evidence regarding [p]laintiff's SSI claim").

> B.  **RFC Assessment**

I turn next to plaintiff's challenge to the ALJ's RFC assessment on the grounds that he improperly relied upon the opinions authored by Balderman and Santarpia. (Docket ## 9-1 at 21-27; 12 at 4-6). Specifically, plaintiff maintains that these opinions were stale, which resulted in an RFC based upon the ALJ's own lay opinion. (*Id.*).

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

On March 2, 2015, plaintiff presented to Dr. Balderman for a consultative internal medicine examination; at the time, her chief complaints were arthritis, headaches, frequent

9

bladder infections, asthma, celiac disease, and sickle cell trait. (Tr. 660-63). Plaintiff reported that her celiac disease caused abdominal cramping but that her diet was helping to alleviate the issue. (*Id.*). She also indicated that she had been to the emergency room at least five times for asthma attacks and that her headaches occurred with her asthma attacks. (*Id.*). With respect to her arthritis, plaintiff reported that she had experienced pain in her hands for many years, but was not taking any specific arthritic medication. (*Id.*).

On physical examination, plaintiff appeared in no acute distress, had normal gait and stance, could walk on her heels and toes, could squat 60% of full, used no assistive devices, needed no help changing for the examination or getting on and off the examination table, and was able to rise from a chair without difficulty. (*Id.*). Balderman noted that plaintiff had mild abdominal tenderness. (*Id.*). Plaintiff demonstrated full flexion, extension, and lateral flexion bilaterally, as well as full rotary movement bilaterally in her cervical and lumbar spine, and she exhibited no scoliosis, kyphosis, or abnormalities in her thoracic spine. (*Id.*). Plaintiff also had full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally, and her joints were stable and nontender. (*Id.*). Plaintiff demonstrated no sensory deficits, full strength in her upper and lower extremities, intact hand and finger dexterity, and full grip strength. (*Id.*). Balderman opined that plaintiff should avoid dusty environments due to her history of frequent asthma attacks. (*Id.*).

That same day, plaintiff presented to Dr. Santarpia for a psychiatric evaluation. (Tr. 654-58). Plaintiff reported difficulty falling asleep, decreased appetite, and anxiety-related symptoms including excessive apprehension, worry, and restlessness, which she attributed to situational stressors including health concerns and her inability to work due to pain. (*Id.*). Plaintiff indicated she was able to care for her personal hygiene, cook, clean, do laundry, and

shop. (*Id.*). She reported that her daily activities included taking care of her children, watching television, going outside, reading, dining out, and socializing with family and friends. (*Id.*). Plaintiff's mental status examination revealed largely unremarkable findings: she was cooperative and had an adequate manner of relating and overall presentation; maintained normal motor behavior and eye contact; had adequate expressive and receptive language capabilities; had coherent and goal-oriented thought processes and a full range of affect; exhibited euthymic mood and clear sensorium; and, was fully oriented and had intact memory, attention and concentration. (*Id.*). Santarpia noted that plaintiff's insight and judgment were poor but her cognitive functioning was average. (*Id.*).

   Based upon her examination, Santarpia opined that plaintiff would be able to perform within normal limits with respect to a variety of mental work-related activities including: understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular work schedule, learning new tasks, performing complex tasks independently, making appropriate decisions, relating adequately with others, and appropriately dealing with stress. (*Id.*). In Santarpia's view, plaintiff suffered from stress-related and substance abuse problems but they did not appear to be significant enough to interfere with plaintiff's ability to function on a daily basis. (*Id.*).

   The ALJ assigned "great weight" to Balderman's and Santarpia's opinions, reasoning that both were consistent with their medical examinations and generally consistent with other objective findings in the record. (Tr. 28). Plaintiff challenges the reliability of Balderman and Santarpia's opinions on the grounds that her medical condition deteriorated after their opinions, thus rendering the opinions stale and unreliable. (Docket # 9-1 at 23).

Plaintiff is generally correct that "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and that "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted); *see also Pritchett v. Berryhill*, 2018 WL 3045096, *8 (W.D.N.Y. 2018) ("[i]f a claimant's status regarding her impairments undergoes 'significant deterioration' after a consultative examination, the examination may not constitute substantial evidence") (citation omitted).  That said, "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *accord Pritchett v. Berryhill*, 2018 WL 3045096 at *8 ("[a] medical opinion based on only part of the administrative record may still be given weight if the medical evidence falling chronologically before and after the opinion demonstrates 'substantially similar limitations and findings'") (citations omitted); *Morgan v. Astrue*, 2010 WL 3723992, *13 (E.D. Tenn.) ("[i]n every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that opinion[;] [f]requently, new evidence about the claimant's condition will come to light during the intervening period of time[;] [t]he SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided"), *report and recommendation adopted by*, 2010 WL 3723985 (E.D. Tenn. 2010).

Plaintiff maintains that her subsequent lupus diagnosis, as well as exacerbation of and ongoing treatment for her other conditions, impairs the ALJ's reliance on Balderman and Santarpia's opinions. I disagree. As an initial matter, as noted by the ALJ, the record does not support that plaintiff was ever definitively diagnosed with lupus. (Tr. 19). Although she reported a history of borderline lupus to her medical providers, and her medical records contain repeated references to lupus in her medical histories and assessments (Tr. 635, 637, 672, 877, 929, 1689, 1692, 1695, 1697, 1699, 1724, 1731, 1743, 1747, 1754, 1772, 1776, 1779, 1783, 1787, 1791, 1795, 1799, 1824, 1829, 1831, 1836), repeated evaluations by a rheumatologist in 2014 and 2016 did not result in that diagnosis, although further testing was recommended (Tr. 649, 664). In September 2017, plaintiff reported to her primary care provider that her rheumatologist had determined that there was "no evidence" that she suffered from lupus. (Tr. 924). Although plaintiff testified that she had been diagnosed with lupus, she acknowledged that the diagnosis was in a "gray area" and that further testing was required. (Tr. 46). Based upon this record, the ALJ found plaintiff's lupus to be a non-medically determinable impairment – a finding not challenged by plaintiff. (Tr. 19).

Plaintiff also contends that after Balderman's March 2015 evaluation she developed headaches with associated light sensitivity. (Docket ## 9-1 at 23; 12 at 5). Review of the record does not demonstrate that the intensity or frequency of plaintiff's headaches materially increased following Balderman's evaluation; rather, plaintiff complained that she suffered from headaches throughout the relevant period. Indeed, she listed headaches as one of the conditions limiting her ability to work when she initially applied for benefits. (Tr. 410). In her function report dated January 4, 2015, plaintiff reported that she suffered from headaches with associated light and sound sensitivity. (Tr. 435-36). As noted by plaintiff, in March 2015 she reported to

13

Balderman that she suffered from headaches, although she attributed them to her asthma attacks. (Tr. 660). Despite her complaints of headaches, the record does not show significant changes in her headaches or ongoing treatment for them following Balderman's evaluation.

In October 2016 plaintiff complained of a headache accompanied by light sensitivity, and she was diagnosed with "acute sinusitis." (Tr. 950). In January 2019 plaintiff complained to her primary care provider of frequent migraines, although it does not appear that her provider made any diagnosis or provided any treatment related to this complaint. (Tr. 1742-43). Although plaintiff again complained of frequent headaches in October and November 2019 (Tr. 1791-1801), her provider apparently attributed the headaches to plaintiff's situational stressors (Tr. 1795 ("[as] a result of all of these stressors she is having bitemporal daily headaches") and did not prescribe any medication or refer plaintiff to a neurologist. In his decision, the ALJ explicitly considered plaintiff's complaints of headaches, including her 2019 complaints. (Tr. 26). He observed that plaintiff did not receive any specialized treatment or medication to address her headaches and noted that he accommodated for plaintiff's headaches in formulating her RFC. (*Id.*).

Plaintiff also suggests that following the consultative evaluations she "began to experience IBS symptoms" and received regular treatments for "celiac disease and related symptoms." (Docket # 9-1 at 23). Review of the record demonstrates that plaintiff suffered from symptoms associated with these conditions prior to Balderman's evaluation, and the record does not establish that the conditions deteriorated significantly following the evaluation. Indeed, plaintiff complained of gastric issues in her initial application for benefits (Tr. 410), and in her function report she reported that she had suffered from stomach pain her entire life (Tr. 433). Although plaintiff is correct that she received ongoing treatment for her gastric-related

impairments, nothing in the record suggests that they deteriorated in such a way as to render Balderman's opinion unreliable. Moreover, the ALJ discussed in his decision plaintiff's ongoing treatment relating to IBS and celiac disease, including her more recent treatment notes from 2019, and stated that he accounted for those conditions and their associated symptoms in formulating the RFC. (Tr. 25-26).

With respect to her mental health conditions, plaintiff contends that she started suffering panic attacks only after Santarpia's evaluation. (Docket # 9-1 at 22). The record shows, however, that plaintiff complained of "panic attacks frequently" in connection with her application for benefits (Tr. 410) and in her function report she reported suffering anxiety attacks accompanied by chest pain, shortness of breath, and tingling and contractions in her body (Tr. 437). In February 2015 plaintiff underwent a psychiatric evaluation conducted by Dedenia Yap, MD, upon referral from her primary care physician. (Tr. 651-52). Upon examination, plaintiff was "quite tense and anxious" and appeared "mildly depressed." (*Id.*). She complained of high levels of anxiety and reported suffering from tingling and chest tightness when anxious. (*Id.*). She was diagnosed with anxiety disorder, not otherwise specified, and prescribed medication and counseling. (*Id.*). Despite plaintiff's complaints of ongoing mental health impairments, there is little evidence in the record that she received additional mental health treatment until September 2019. (Tr. 2014-2068). Those treatment notes suggest that plaintiff experienced some exacerbation of her symptoms due to situational stressors but that she was reportedly "doing well" by December 2019 and displayed appropriate affect and cheerful mood, although her thought content continued to be "characterized by preoccupation with external stressors." (Tr. 2057-2067). The ALJ discussed plaintiff's 2019 mental health treatment notes in

15

his decision and considered the medical source statement submitted by plaintiff's mental health counselor. (Tr. 27, 28-29).

In summary, plaintiff neither points to any medical evidence showing that her conditions deteriorated and caused disabling functional limitations after the opinions were rendered, nor identifies any relevant evidence post-dating the medical opinions that the ALJ failed to consider. For these reasons, I find that substantial evidence supports the ALJ's RFC assessment. *See, e.g.*, *Ambrose-Lounsbury v. Saul*, 2019 WL 3859011, *3-4 (W.D.N.Y. 2019) ("[claimant] has not shown significant developments in her medical history following [the consultative examiner's] opinion that render it stale[;] . . . [claimant's] only new ailment after [the consultative examiner's] examination was the 'left ankle swelling'[;] . . . [b]ut the record does not evidence any limitation from that swelling that the ALJ did not account for in the RFC[;] [s]o the ankle swelling is hardly a 'significant development'"); *Sexton v. Berryhill*, 2018 WL 1835494, *7 (W.D. Okla.) (finding no error where ALJ relied on opinion evidence that was rendered "before all of the medical evidence was in and [[p]laintiff] became more severe[;] . . . [h]ere, however, the opinions of the state agency physicians are relevant to the period to which they apply, and [p]laintiff does not identify any evidence of a subsequent deterioration in [p]laintiff's condition that was not reviewed and considered by the ALJ[;] [t]he ALJ expressly stated that additional evidence . . . was received and admitted into the record subsequent to the hearing and that he reviewed this evidence and considered it in his determination[;] . . . [b]ecause the ALJ independently reviewed and considered the post-2014 evidence, and [p]laintiff points to no credible evidence inconsistent with the RFC, the undersigned finds no reversible error in the ALJ's reliance on the agency physicians' opinions"), *report and recommendation adopted by*, 2018 WL 1858255 (W.D. Okla. 2018); *Morgan v. Astrue*, 2010 WL 3723992 at *13 ("[i]n this

case, [p]laintiff has not shown that the additional objective evidence he cites was inconsistent with the opinions of [the consultative physicians][;] . . . [p]laintiff has not explained how a review of the new evidence he cites would have changed the opinions provided by [the consultative physicians][;] [a]ccordingly, the [c]ourt cannot find error in the ALJ's decision to rely upon the doctors' opinions").

On this record, I disagree that Balderman's and Santarpia's consultative medical opinions were rendered stale by subsequent developments in plaintiff's medical record, and I find that the RFC is supported by substantial evidence.

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB and SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                    *s/Marian W. Payson*
                                                    MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
        February 9, 2023